## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID F. BUCK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No.: 1:12-cv-1289 (BAH) |
| | ) |
| THE GOVERNMENT OF THE | )   **JURY TRIAL DEMANDED** |
| DISTRICT OF COLUMBIA, | ) |
| | ) |
| MICHAEL BAKER, GERMAINE | ) |
| BENNETT, BRANDON CLAY, | ) |
| MATTHEW DOMAS, WALTER | ) |
| FARYNIARZ, DUSTIN HUGEE, | ) |
| JOHN ROBINSON, JODY SHEGAN, | ) |
| JEFFREY SIPES, ANTHONY SMITH, | ) |
| CHANCHAM SPEARS, | ) |
| JOSHUA A. STARNES, VICKI STEEN, | ) |
| ERIC WALSH, | ) |
| | ) |
| c/o:   Metropolitan Police Department | ) |
| First District | ) |
| 101 M Street, SW | ) |
| Washington, DC  20024, | ) |
| | ) |
| ERIC GORDIEJEW, ANTONNE | ) |
| LE BLANC, CHRISTINE LOPEZ, | ) |
| JOHN MATULA, JEFFREY | ) |
| MCKEEVER, PAUL PADBERG, | ) |
| ROBERT SCHERR, SHAWN SEIGEL, | ) |
| JOEL TAYLOR, and MICHAEL | ) |
| WILLIAMS, | ) |
| | ) |
| c/o:   United States Park Police | ) |
| 1100 Ohio Drive, SW | ) |
| Washington, DC  20242, | ) |
| | ) |
| Defendants. | ) |
| | ) |

### SECOND AMENDED COMPLAINT
### AND JURY TRIAL DEMAND

Plaintiff, David F. Buck ("Plaintiff" or "Mr. Buck"), by and through his undersigned counsel, brings this action against the Government of the District of Columbia, officers of the Metropolitan Police Department ("MPD"), and officers of the United States Park Police ("USPP") to redress deprivation of his civil rights under the Fourth and Fifth Amendments to the U.S. Constitution, and related common law claims. This action for damages arises out of the brutal beating Mr. Buck suffered at the hands of the MPD and USPP officers while in MPD and USPP custody, as well as the inaction of certain MPD and USPP officers.

### JURISDICTION AND VENUE

1.  This Court has jurisdiction over Plaintiff's Fourth and Fifth Amendment claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). This Court has supplemental/pendent jurisdiction over Plaintiff's common law claims pursuant to 28 U.S.C. § 1367(a).

2.  Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391, in that the District of Columbia is a Defendant in this litigation and the events giving rise to this action took place in this judicial district.

3.  The District of Columbia was properly given notice of this claim pursuant to D.C. Code § 12-309, insofar as Plaintiff served a notice on the Mayor of the District of Columbia, and/or his designees, on or about January 25, 2012.

### PARTIES AND OTHER ACTORS

4.  Plaintiff David Buck is an adult individual residing in Woodbridge, Virginia at 14838 Dorian Drive.

5.  Defendant District of Columbia is a municipal corporation capable of being sued under D.C. Code § 1-102, and it is the employer of the officers listed below ("MPD Officers"). The District of Columbia MPD is a department within the District of Columbia.

6.    On information and belief, at all relevant times herein, the MPD officers were MPD employees and/or agents, and/or District of Columbia employees and/or agents, acting within the scope of their employment and/or agency with the District of Columbia, and whose identities are known to the District of Columbia.

7.    Under the doctrine of respondeat superior and/or the governmental actors doctrine, the District of Columbia is legally responsible for, *inter alia*, the misconduct of the MPD officers committed within the scope of their employment and/or agency with the District of Columbia.

8.    USPP officers, listed below ("USPP Officers"), also partook in the beating of Mr. Buck by, *inter alia*, repeatedly tasing him, dragging him out of the shattered driver's window, throwing him to the ground face-down, and then idly standing around while the MPD officers beat him, failing to do anything to stop the violence.

9.    Under the doctrine of respondeat superior and/or the governmental actors doctrine, the USPP is legally responsible for, *inter alia*, the misconduct of the USPP officers committed within the scope of their employment and/or agency with the USPP.  Plaintiff is proceeding with a Federal Tort Claims Act ("FTCA") claim against the USPP, and that claim is not ripe for federal court jurisdiction, as he must first pursue resolution of that claim through the FTCA complaint process.

10.   Defendant Reserve Officer Michael Baker is an adult individual employed, at all relevant times to this Complaint, with MPD 1D at 101 M Street, NW, Washington, DC 20024.

11.   Defendant Officer Germaine Bennett is an adult individual employed, at all relevant times to this Complaint, with MPD 1D at 101 M Street, NW, Washington, DC 20024.

12.   Defendant Officer Brandon Clay is an adult individual employed, at all relevant times to this Complaint, with MPD 1D at 101 M Street, NW, Washington, DC 20024.

13.     Defendant Sergeant Matthew Domas is an adult individual employed, at all relevant times to this Complaint, with MPD 1D at 101 M Street, NW, Washington, DC 20024.

14.     Defendant Sergeant Walter Faryniarz is an adult individual employed, at all relevant times to this Complaint, with MPD 1D at 101 M Street, NW, Washington, DC 20024.

15.     Defendant Officer Dustin Hugee is an adult individual employed, at all relevant times to this Complaint, with MPD 1D at 101 M Street, NW, Washington, DC 20024.

16.     Defendant Officer John Robinson is an adult individual employed, at all relevant times to this Complaint, with MPD 1D at 101 M Street, NW, Washington, DC 20024.

17.     Defendant Master Patrol Officer Jeffrey Sipes is an adult individual employed, at all relevant times to this Complaint, with MPD 1D at 101 M Street, NW, Washington, DC 20024.

18.     Defendant Officer Jody Shegan is an adult individual employed, at all relevant times to this Complaint, with MPD 1D at 101 M Street, NW, Washington, DC 20024.

19.     Defendant Officer Anthony Smith is an adult individual employed, at all relevant times to this Complaint, with MPD 1D at 101 M Street, NW, Washington, DC 20024.

20.     Defendant Officer Chancham Spears is an adult individual employed, at all relevant times to this Complaint, with MPD 1D at 101 M Street, NW, Washington, DC 20024.

21.     Defendant Officer Joshua A. Starnes is an adult individual employed, at all relevant times to this Complaint, with MPD 1D at 101 M Street, NW, Washington, DC 20024.

22.     Defendant Officer Vicki Steen is an adult individual employed, at all relevant times to this Complaint, with MPD 1D at 101 M Street, NW, Washington, DC 20024.

23.     Defendant Officer Eric Walsh is an adult individual employed, at all relevant times to this Complaint, with MPD 1D at 101 M Street, NW, Washington, DC 20024.

24.     Defendant Officer Eric Gordiejew is an adult individual employed, at all relevant times to this Complaint, with USPP at 1100 Ohio Drive, SW, Washington, DC 20242.

25.     Defendant Officer Antonne Le Blanc is an adult individual employed, at all relevant times to this Complaint, with USPP at 1100 Ohio Drive, SW, Washington, DC 20242.

26.     Defendant Lieutenant Christine Lopez is an adult individual employed, at all relevant times to this Complaint, with USPP at 1100 Ohio Drive, SW, Washington, DC 20242.

27.     Defendant Master Patrol Officer John Matula is an adult individual employed, at all relevant times to this Complaint, with USPP at 1100 Ohio Drive, SW, Washington, DC 20242.

28.     Defendant Officer Jeffrey McKeever is an adult individual employed, at all relevant times to this Complaint, with USPP at 1100 Ohio Drive, SW, Washington, DC 20242.

29.     Defendant Sergeant Paul Padberg is an adult individual employed, at all relevant times to this Complaint, with USPP at 1100 Ohio Drive, SW, Washington, DC 20242.

30.     Defendant Sergeant Robert Scherr is an adult individual employed, at all relevant times to this Complaint, with USPP at 1100 Ohio Drive, SW, Washington, DC 20242.

31.     Defendant Officer Shawn Seigel is an adult individual employed, at all relevant times to this Complaint, with USPP at 1100 Ohio Drive, SW, Washington, DC 20242.

32.     Defendant Officer Joel Taylor is an adult individual employed, at all relevant times to this Complaint, with USPP at 1100 Ohio Drive, SW, Washington, DC 20242.

33.     Defendant Officer Michael Williams is an adult individual employed, at all relevant times to this Complaint, with USPP at 1100 Ohio Drive, SW, Washington, DC 20242.

## FACTUAL BACKGROUND

34.     On August 3, 2011 at approximately 11:30 pm, MPD and USPP patrol units attempted to pull over Mr. Buck's vehicle as Mr. Buck travelled into the District of Columbia from Virginia.

35.     Mr. Buck's passenger in the vehicle was his mother, Donna Buck.

36.     After USPP and MPD units pursued Mr. Buck's vehicle for a few minutes, Mr. Buck was stopped in his vehicle on G Street, SW, facing towards 9th Street, SW.

37.     After Mr. Buck's car was at a complete stop, and was blocked in by patrol multiple units, such that his car was immobilized, an officer deployed his ASP baton and shattered the front and rear passenger windows and, on information and belief, other officers used their ASP batons to shatter Mr. Buck's front driver-side window, as well.

38.     Mr. Buck was then beaten in the head, face, neck, back, and chest with ASP batons, flashlights, and fists, through the opening of the shattered window.  At this point, Mr. Buck lost the first of several teeth.

39.     At the time he was beaten through the smashed window of his car, he was still wearing his seatbelt.  Mr. Buck was not combative and repeatedly verbally reassured the officers that he was unarmed.

40.     In particular, a USPP officer reported that an MPD officer beat Mr. Buck square in his face with the butt-end of his ASP between eight and ten times.

41.     In fact, a USPP officer even took his own flashlight and proceeded to beat Mr. Buck in the face and shoulder.

42.     USPP officers shot Mr. Buck three times with taser weapons, which sent barbed projectiles into Mr. Buck's arm and chest.

43.     Mr. Buck, who was screaming, but not putting up a fight and was still buckled by a seatbelt, described the pain of three sets of taser leads pulsating into his arm and chest as "unimaginable."

44.     While Mr. Buck was being beaten with ASP batons and electrocuted with several sets of tasers, officers forcibly removed his mother from the passenger seat who then fell to the pavement; an officer then entered into the passenger seat and unfastened Mr. Buck's seat belt.

45.     Several officers then reached in through the smashed window and, after an officer punched Mr. Buck in the shoulder several times, dragged Mr. Buck through the shattered window and threw him to the ground face-down.

46.     USPP officers pulled Mr. Buck's hands behind his back and handcuffed his hands behind his back, tightening the handcuffs such that he had visible marks on his wrists at a court appearance weeks later.

47.     The handcuffs securely – and improperly – overly-tightened, with Mr. Buck's hands behind his back, and face-down, an officer shot Mr. Buck in the back with yet another set of taser barbs.  The beating eventually took on a life of its own (and without any input from Mr. Buck), with no semblance of order or discipline on the part of the MPD and USPP officers, who continued to beat him gratuitously.

48.     As a result of being dragged face-down along the rough pavement, skin was torn away from Mr. Buck's forehead, and his head remains disfigured to this day.

49.     While Mr. Buck was on the ground and compliant, officers continued to beat him, stomping on his head, kicking him repeatedly, and dragging him, all of which contributed to knocking out more of his teeth.

50.     Soon after the beating began, Mr. Buck sustained serious injuries and was in need of medical attention.  However, MPD and USPP officers continued to beat him well after Mr. Buck's need for medical attention was open and obvious.

51.     A female police officer called out to the officers engaged in beating Mr. Buck to "stop or you will kill him."  At least one officer did not take part in the beating of Mr. Buck.

52.   Mr. Buck passed in and out of consciousness during and after the beating, as he lay in a three-and-a-half foot wide pool of his own blood with several knocked-out teeth scattered around the street.  Much of the skin was torn from his forehead and arms from being dragged face down on the street.

53.   Throughout the incident, and despite their duty to protect, certain MPD and USPP officers idly watched the events unfold, yet failed to do anything to stop the officers' beating of Mr. Buck and the USPP officers' needless tasings of Mr. Buck.

54.   An officer reported approximately twelve USPP cruisers that pulled Mr. Buck's vehicle over, and according to the officers' statements, there were approximately eight MPD cruisers on the scene, as well.

55.   On information and belief, no audio or video of the incident currently exists and there is no available recording by audio or video of the beating, despite the fact that there were approximately twenty units that were on the scene.

56.   Mr. Buck was then arrested, and only then was he transported to the George Washington University Hospital.

57.   Hospital personnel discovered that the taser barbs were buried so deeply in Mr. Buck's flesh that a 40-minute procedure was required to extract them.

58.   An officer who responded to the hospital stated that he had never seen taser barbs that deep.

59.   An officer had taken several color pictures of Mr. Buck following the beating, and even showed them to Mr. Buck.  Those pictures have not been produced.

60.   Mr. Buck required a five-day hospitalization at the George Washington University Hospital as a result of the serious physical injuries he sustained at the hands of the officers.

61.   Mr. Buck's hospital and medical bills as a result of the incident exceed $46,000, and he is hounded by bill collectors seeking payment on behalf of medical providers.

62.     Among other injuries as a result of the incident, Mr. Buck had several teeth knocked out; had
        several abrasions to and torn skin from his head, neck, arms, chest, and back; had nerve
        damage to his neck; and had no sensation in his arm for seven to eight months.  He remains
        disfigured in several ways to this day.

63.     Later, Mr. Buck had to have other teeth, which had been broken off at the root near the gum-
        line during the course of his beating, removed by a dentist.

64.     His mother, Donna Buck, who was his passenger, was also beaten by several officers and
        subsequently transported to Howard University Hospital for medical treatment.

65.     Mr. Buck was later falsely charged by the MPD with assault on a police officer, in
        accordance with the custom and practice of the MPD.

66.     Mr. Buck submitted Freedom of Information Act ("FOIA") requests to the MPD and USPP,
        each of whom have stonewalled his requests and have withheld, improperly, information
        relevant to his beating.

67.     Only a portion of the pictures were produced in response to Mr. Buck's FOIA requests.  The
        pictures that were produced were not in color, and were grainy and very low contrast.

68.     On information and belief, the MPD has failed properly to train its officers in the appropriate
        ways to effect an arrest, as well as the legal limits regarding their use of force.

69.     On information and belief, the MPD maintains a custom of ratifying, and/or at least
        habitually failing to discipline, an officer's actions when that officer beats up a suspect and
        then falsely charges the suspect with resisting arrest or assault on a police officer in order to
        cover up the officer's wrongdoing and/or to attempt, ex post facto, to justify the officer's
        wrongful acts.

70.     In fact, according to the MPD Office of Police Complaints Annual Reports for the 2011 and
        2012 Fiscal Years, the number of sustained complaints involving excessive force have not

gone down between 2011 and 2012.  Further, the number of sustained complaints involving harassment has more than doubled between 2011 and 2012.

71.     According to the MPD Office of Police Complaints Annual Report for the 2012 Fiscal Year, since 2011, allegations of force involving ASPs have gone up by 100%, chokeholds have gone up by 42%, forcible handcuffing has gone up by 5%, striking with a punch hasn't decreased at all, and striking with an object has gone up by 100%.

72.     On information and belief, the MPD Office of Police Complaints Annual Reports for the 2011 and 2012 Fiscal Years indicate that excessive use of force by officers during the 2011 fiscal year – the time period during which Mr. Buck suffered the brutal beating at the hands of several MPD officers – has not been adequately dealt with by the MPD over the 2012 fiscal year that followed.

73.     In Mr. Buck's case, he filed a complaint with the Office of Police Complaints.  He was informed that the matter was under investigation and was later referred to the United States Attorney's Office for the District of Columbia for possible criminal prosecution.  No one from the United States Attorney's Office for the District of Columbia ever notified Mr. Buck of the status of their investigation.

74.     The District of Columbia had a duty to thoroughly investigate the circumstances behind the beating that resulted in Mr. Buck having, among other injuries, his teeth knocked out, skin scraped away from his forehead, and three sets of taser barbs shot into his chest, arm, and back.  The final investigation report is insufficient and failed to adequately investigate the severe injuries Mr. Buck suffered, as required by D.C. Code § 5-1102(2).

75.     The final investigation report does not report on the injuries Mr. Buck suffered, including, among other injuries, teeth being broken off and knocked out, several sets of taser barbs being shot into his body, and skin being torn away from his forehead from being dragged

face-down along the pavement.  In fact, the report did not acknowledge that these severe injuries even occurred.

76.     Further, the report never explains or references any reasoning or justification that the officers had for inflicting the injuries portrayed above.  A complete report obviously must have included an inquiry into and findings concerning whether the force used by the officers, and the resultant severe injuries Mr. Buck suffered, were excessive or within standards.

77.     The District of Columbia had a duty to ensure that the final investigation report included "written findings of fact regarding all material issues of fact," as required by D.C. Code § 5-1111(h).  Reporting on the circumstances surrounding the severe physical injuries that Mr. Buck suffered, including having his teeth broken off and knocked out, skin torn away from his forehead, and three sets of taser barbs shot into his body, at the hands of the officers is certainly to be considered reporting on "material issues" for purposes of § 5-1111(h).

78.     Further, the District of Columbia's final report does not mention any audio or visual footage of the events as they occurred, but only pictures that had been captured after the fact.

79.     As a result of his motion for early discovery in this case, Mr. Buck has obtained the District's investigation into his matter.  The investigation provided to Mr. Buck was self-serving and inadequate.

80.     On information and belief, the MPD has neither fired nor disciplined any of the MPD officers for their beating of Mr. Buck.

**COUNT I**
**Battery**
**(All Defendants)**

81.   Paragraphs 1 through 80 are incorporated by reference as though fully set forth herein.

82.   This claim of battery is brought against the individually-listed MPD Officers, the individually-listed USPP Officers, and the District of Columbia.

83.   On or about August 3, 2011, MPD officers physically assaulted Mr. Buck by striking him repeatedly with ASP batons, flashlights, and fists, stepping on his head, knocking his teeth out, and kicking him.

84.   Similarly, USPP officers physically assaulted Mr. Buck by repeatedly shooting and electrocuting Mr. Buck with several sets of tasers, dragging him out of the car through the shattered window of the driver's door, and throwing him to the ground face-down.

85.   The MPD and USPP officers' battery of Mr. Buck constituted an unlawful, intentional, and offensive touching and use of force, as well as being completely over-the-top and unnecessary in light of the circumstances.

86.   At no time did Mr. Buck consent to such a touching or use of force, nor did he do anything to provoke such a touching and use of force, or act in such a way where such a touching and use of force would be considered reasonably necessary.

87.   All actions of the MPD officers throughout the battering of Plaintiff, and their actual and wrongful use of force in beating Plaintiff, occurred within the course of their duty and the scope of their employment and/or agency as employees of the District of Columbia. Defendant District of Columbia, therefore, is vicariously liable for the actions of these individual defendants, namely the officers' beating of Plaintiff, under the theory of respondeat superior.

88.   At all relevant times, the use of unreasonable and excessive force by the MPD and USPP officers was in violation of their duty to only use reasonable measures in their interaction

with and treatment of Plaintiff, in addition to any and all applicable regulation(s), order(s), and/or standard(s), including, but not limited to, General Orders 901.07, 201.26, and 501.07; Special Order 97-31; and the "Spectrum of Force" and "Use of Force Continuum."

89.     As a result of the MPD and USPP officers' willful, wrongful, and intentional beating of Plaintiff, Plaintiff suffered extreme pain and emotional distress, as portrayed above, was prevented from pursuing his usual routine activities, and was caused economic damages including, but not limited to, expenses for hospital and medical care, rehabilitation, counseling, and/or future medical care.

WHEREFORE, Plaintiff demands judgment against the individually-listed MPD Officers, the individually-listed USPP Officers, and the District of Columbia, jointly and severally, as follows:

(1)     Compensatory damages in the amount of no less than $500,000.00,

(2)     Punitive damages in the amount of no less than $500,000.00,

(3)     Costs and expenses associated with this suit, and

(4)     Such other and further relief as this Court deems appropriate.

**COUNT II**
**Intentional Infliction of Emotional Distress**
**(All Defendants)**

90.     Paragraphs 1 through 89 are incorporated by reference as though fully set forth herein.

91.     This claim of intentional infliction of emotional distress is brought against the individually-listed MPD Officers, the individually-listed USPP Officers, and the District of Columbia.

92.     The MPD and USPP officers' acts, as portrayed above, namely their battering of Plaintiff, were so outrageous in character and extreme in degree so as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

93.     In particular, the USPP officers' needless and repeated tasings of Plaintiff through multiple sets of taser barbs that were shot into Plaintiff's arm and chest.

94.     Further, after having been handcuffed and secured face-down on the pavement, yet another
        set of taser barbs had been shot into Plaintiff's back.

95.     MPD officers proceeded to senselessly beat Plaintiff to a bloody pulp with their ASP batons,
        flashlights, and fists, dragging him face-down across the pavement, tearing skin away from
        his forehead, and, literally, kicking him while he was down, all the while knowing there
        wasn't a single thing Plaintiff could do to make it all stop.

96.     The MPD and USPP officers engaged in the aforementioned conduct intentionally, or at least
        recklessly.

97.     As a result of the aforementioned conduct, namely the MPD and USPP officers' brutal and
        senseless beating of Plaintiff, and the USPP officers' repeated tasings of Plaintiff, the MPD
        and USPP officers intentionally, or at least recklessly, caused Plaintiff to suffer severe
        emotional distress by battering him.

98.     All actions of the MPD officers throughout their beating of Plaintiff, the actual and wrongful
        use of force to batter Plaintiff, and the intentional infliction of emotional distress upon
        Plaintiff occurred during the course of their duties and scope of their employment and/or
        agency as police officers and employees of the District of Columbia.  Defendant District of
        Columbia, therefore, is vicariously liable for the actions of these individual defendants,
        namely the officers' causing of severe emotional distress for Plaintiff, under the theory of
        respondeat superior.

        WHEREFORE, Plaintiff demands judgment against the individually-listed MPD Officers, the
individually-listed USPP Officers, and the District of Columbia, jointly and severally, as follows:

        (1)     Compensatory damages in the amount of no less than $500,000.00,

        (2)     Punitive damages in the amount of no less than $500,000.00,

        (3)     Costs and expenses associated with this suit, and

        (4)     Such other and further relief as this Court deems appropriate.

**COUNT III**
**42 U.S.C. § 1983**
**Violation of Fourth and Fifth Amendment Rights**
**(MPD Officers)**

99.     Paragraphs 1 through 98 are incorporated by reference as though fully set forth herein.

100.    This Count arises under 42 U.S.C. § 1983 and the Fourth and Fifth Amendments to the U.S. Constitution, and is brought against the individually-listed MPD Officers in their individual capacities.

101.    At all relevant times, the MPD officers involved acted under the color of the laws of the District of Columbia.

102.    At all relevant times, Plaintiff enjoyed the clearly established protections of the Due Process Clause of the Fifth Amendment to the U.S. Constitution, prohibiting, among other things, egregious deprivation of the rights to safety, bodily integrity, and personal security.  At all relevant times, Plaintiff also enjoyed the clearly established protections of the Fourth Amendment to the U.S. Constitution – namely the protection against excessive force in the course of an arrest or seizure.

103.    Throughout the incident set forth in the foregoing paragraphs, the MPD officers were subject to the constitutional obligation to take all reasonable measures to guarantee Plaintiff's clearly established rights to safety, bodily integrity, personal security, and freedom from excessive force, including, but not limited to, the duties to prevent an officer's beating of Plaintiff, to stop an officer's beating of Plaintiff, and to render proper medical aid to Plaintiff.

104.    By the officers' outrageous and unconscionable conduct in beating the Plaintiff under the aforesaid circumstances, the MPD officers acted with conscience-shocking, deliberate indifference to the deprivation of Plaintiff's Fourth and Fifth Amendment rights in subjecting him to the known, egregious, and substantial risk of serious bodily harm and excessive force, which resulted in actual harm to Plaintiff.

105. Additionally, by their deliberate disregard of Plaintiff's serious need for medical treatment – by failing to take him to the hospital until after the beating had finally come to an end – which need was, in fact, readily apparent and arose soon after Plaintiff's beating first began, the MPD officers acted with deliberate indifference to a serious medical need, in further violation of Plaintiff's Fifth Amendment rights.

106. As a result of the egregious battery and the failure to see to Plaintiff's serious need for medical treatment until after the MPD officers had finished beating him, Plaintiff sustained severe and permanent, personal (both physical and emotional) injuries, requiring hospitalization, follow-up medical care, and counseling.

107. The MPD officers' above-stated actions and inactions, concerning the actual use of excessive force – and failure to render medical treatment – resulting in the battering of Plaintiff without cause, constituted misconduct that was unreasonable, reckless and outrageous, and in blatant violation of Plaintiff's clearly established constitutional rights to be free from unwarranted deprivations of safety, bodily integrity, and personal security without due process, under the Due Process Clause of the Fifth Amendment to the U.S. Constitution, as well as Plaintiff's clearly established constitutional right to be free from excessive force during an arrest or seizure under the Fourth Amendment to the U.S. Constitution.

108. The MPD officers' acts and omissions, as portrayed above, including their battery of Plaintiff, as well as their deliberate indifference to Plaintiff's serious medical need, were so outrageous in character and extreme in degree so as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

109. Further, the MPD officers knew that their actions and/or failures to act would cause Plaintiff to suffer extreme pain and mental anguish for an unreasonable length of time.

110. These actions constituted intentional, willful, and callous disregard of Plaintiff's civil rights.

WHEREFORE, Plaintiff demands judgment against the individually-listed MPD Officers, jointly and severally, as follows:

(1)     Compensatory damages in the amount of no less than $500,000.00,

(2)     Punitive damages in the amount of no less than $500,000.00,

(3)     Costs and attorneys' fees associated with this suit, which are recoverable pursuant to 42 U.S.C. § 1988, and

(4)     Such other and further relief as this Court deems appropriate.

### COUNT IV
### 42 U.S.C. § 1983
### Violation of Fourth and Fifth Amendment Rights
### (District of Columbia)

111.    Paragraphs 1 through 110 are incorporated by reference as though fully set forth herein.

112.    This Count arises under 42 U.S.C. § 1983 and the Fourth and Fifth Amendments to the U.S. Constitution, and is brought against the District of Columbia.

113.    Defendant District of Columbia has a custom, pattern, and practice, either tacit or explicit, of failing to adequately oversee the training and supervision of its officers, including the MPD officers, regarding the proper use of force in effecting an arrest.

114.    Defendant District of Columbia's employees, including the MPD officers, have a custom, pattern, and practice, either tacit or explicit, of beating suspects, then falsely charging the suspect with resisting arrest and/or assaulting a police officer in order to cover up the crimes committed by its own officers.

115.    Defendant District of Columbia also has a custom, pattern, and practice, either tacit or explicit, of ratifying, or at least habitually failing to discipline, officers' treatment and false charges of suspects in circumstances where officers have improperly and/or illegally harmed citizens in order to provide an excuse for their wrongdoing and/or to obtain legal justification for their wrong actions.

116.  Defendant District of Columbia's custom, pattern, and practice of ratification, or at least its habitual failure to discipline, as portrayed above, caused the MPD officers to disregard their affirmative constitutional obligations – namely to protect Plaintiff's rights to safety, bodily integrity, personal security, and freedom from excessive force – knowing that they would not face any repercussions by the MPD.

117.  On information and belief, the MPD officers have not, in fact, faced any repercussions by the MPD.

118.  Due to the Defendant District of Columbia's custom, pattern and practice of ratification, or at least its habitual failure to discipline, as portrayed above, the MPD officers chose to handle the situation in an overly extreme and outrageous manner which ultimately caused severe, permanent, and horrific physical injuries to Plaintiff.

WHEREFORE, Plaintiff demands judgment against the District of Columbia as follows:

(1)  Compensatory damages in the amount of no less than $500,000.00,

(2)  Punitive damages in the amount of no less than $500,000.00,

(3)  Costs and attorneys' fees associated with this suit, which are recoverable pursuant to 42 U.S.C. § 1988, and

(4)  Such other and further relief as this Court deems appropriate.

### COUNT V
### *Bivens* Claims
### Violation of Fourth and Fifth Amendment Rights
### (USPP Officers)

119.  Paragraphs 1 through 118 are incorporated by reference as though fully set forth herein.

120.  This Count arises under the Fourth and Fifth Amendments to the U.S. Constitution, and is brought against the individually-listed USPP Officers in their individual capacities, pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

121.   At all relevant times, the USPP officers, an arm of the Department of the Interior's National Park Service, acted under the color of the laws of the District of Columbia.

122.   Throughout the incident set forth in the foregoing paragraphs, the USPP officers were subject to the constitutional obligation to take all reasonable measures to guarantee Plaintiff's clearly established rights to safety, bodily integrity, personal security, and freedom from excessive force, including, but not limited to, the affirmative duty to prevent other MPD and USPP officers from needlessly and senselessly beating Plaintiff, and to stop other MPD and USPP officers who had already started to needlessly and senselessly beat Plaintiff.

123.   By their outrageous and unconscionable conduct in repeatedly and needlessly tasing Plaintiff, dragging him out of the shattered driver's window, and idly standing by as the other officers continued to beat him, certain USPP officers acted with conscience-shocking, deliberate indifference to the deprivation of Plaintiff's Fourth and Fifth Amendment rights in allowing him to continue to be subjected to the known, egregious, and substantial risk of serious bodily harm caused and excessive force used by the MPD and USPP officers, which resulted in actual harm to the Plaintiff.

124.   Additionally, by failing to act on Plaintiff's serious need for medical treatment until after the beating had finally come to an end, which need was readily apparent and arose soon after Plaintiff's beating first began, the USPP officers' actions amount to a deliberate indifference to a serious medical need, in further violation of Plaintiff's Fifth Amendment rights.

125.   The USPP officers' above-stated actions and inactions constituted misconduct that was unreasonable, reckless and outrageous, and in blatant violation of Plaintiff's clearly established constitutional rights to be free from unwarranted deprivations of safety, bodily integrity, and personal security without due process, under the Due Process Clause of the Fifth Amendment to the U.S. Constitution, as well as Plaintiff's clearly established

constitutional rights to be free from excessive force during an arrest or seizure under the

Fourth Amendment to the U.S. Constitution.

126.    These actions constituted intentional, willful, and callous disregard of Plaintiff's civil rights.

WHEREFORE, Plaintiff demands judgment against the individually-listed USPP Officers,

pursuant to *Bivens*, jointly and severally, as follows:

(1)    Compensatory damages in the amount of no less than $500,000.00,

(2)    Punitive damages in the amount of no less than $500,000.00,

(3)    Costs and attorneys' fees associated with this suit, which are recoverable pursuant to

42 U.S.C. § 1988, and

(4)    Such other and further relief as this Court deems appropriate.

**COUNT VI**
**Negligence and Negligent Supervision**
**(All Defendants)**

127.    Paragraphs 1 through 126 are incorporated by reference as though fully set forth herein.

128.    This claim of negligence and negligent supervision is brought against the individually-listed

MPD Officers, the individually-listed USPP Officers, and the District of Columbia.

129.    Defendants, directly and/or by or through their respective agents and/or employees, were

negligent and breached their duty of care to Plaintiff while he was in their custody.

130.    Defendants were negligent and breached their duties of care by, among other things, failing

to comply with all applicable laws, statutes, regulations, training, police standards, police

special orders, and general orders with regard to the treatment and actions of Plaintiff while

he was in their custody.

131.    The MPD officers failed to comply with General Order 901.07, which states in relevant part:

"[T]he policy of the Department is that an officer shall use only that force which is

reasonably necessary to bring an incident under control, while protecting the lives of the

officers and others."

132.    The MPD officers failed to comply with their duty, pursuant to General Order 901.07, to use non-deadly force only when such force is necessary to protect themselves or another from physical harm, to restrain or subdue a resistant individual, or to bring an unlawful situation safely and effectively under control.

133.    The MPD officers failed to comply with their duty, pursuant to Special Order 97-31, Code of Ethics, to not conduct themselves in any way which may be construed as immoral, indecent, and/or unprofessional.

134.    The MPD officers failed to comply with their duty, pursuant to the MPD's "Spectrum of Force" and "Use of Force Continuum," to ensure that each member, in all cases, uses only the minimal amount of force necessary for the accomplishment of their mission, and only uses force to protect life and property, to make a lawful arrest, to prevent escape of a law-violator, to control an unlawful situation, and/or to restrain a resisting suspect or prisoner.

135.    The MPD officers failed to comply with their duty, pursuant to General Order 201.26, to report any violations of the rules of the MPD by any other member of the MPD to their immediate supervisor.

136.    The MPD officers also failed to comply with their duty, pursuant to General Order 201.26, to not strike or use any form of physical force on a person with whom they are dealing, except when necessary to prevent an escape, when acting in self-defense, or to prevent violence to another person.  No such justifiable circumstances existed here.

137.    Additionally, under the guidelines and orders set forth above, the MPD officers had a duty to intervene and prevent other MPD officers from using inappropriate force against Plaintiff.

138.    Once the officers began senselessly beating Plaintiff, each MPD officer owed Plaintiff an affirmative duty to prevent another officer's assault of Plaintiff.

139.   Defendant District of Columbia, as the employer of the MPD officers, had a duty to adequately oversee the training and supervision of its officers regarding the proper use of force in effecting an arrest, including the one described above.

140.   As evidenced by MPD Office of Police Complaints Annual Reports, the District of Columbia knew, or at least should have known, that MPD officers were repeatedly involved in incidents involving, *inter alia*, excessive force against citizens.

141.   Further, as evidence by the MPD Office of Police Complaints Annual Reports for Fiscal Years 2011 and 2012, the District of Columbia has failed to take adequate measures to prevent these incidents from occurring.  Moreover, the District of Columbia's failure to terminate the employment of the officers involved indicates that the District is not willing to do what is necessary to help prevent incidents of excessive force.

142.   The MPD officers and the District of Columbia breached these duties owed to Plaintiff, with such breach being the direct and proximate cause of Plaintiff's significant and several injuries, noted above and below.

143.   As a result of the MPD officers' and the District of Columbia's negligence and negligent supervision, Plaintiff suffered serious physical injury, suffered and will continue to suffer from pain, mental anguish, and distress, and was caused economic damages, including, but not limited to, expenses for hospital and other medical care, as well as future medical care.

144.   Throughout the incident portrayed above, the USPP officers held the same affirmative duties to ensure that Plaintiff's rights to safety, bodily integrity, personal security, and freedom from excessive force would not be disregarded.

145.   However, by failing to prevent, and by failing to even try to prevent, the officers' beating of the Plaintiff, certain MPD and USPP officers disregarded their affirmative duties to ensure that Plaintiff's rights to safety, bodily integrity, personal security, and freedom from excessive force would not be infringed.

WHEREFORE, Plaintiff demands judgment against the individually-listed MPD Officers, the individually-listed USPP Officers, and the District of Columbia, jointly and severally, as follows:

(1)     Compensatory damages in the amount of no less than $500,000.00,

(2)     Punitive damages in the amount of no less than $500,000.00,

(3)     Costs and expenses associated with this suit, and

(4)     Such other and further relief as this Court deems appropriate.

### COUNT VII
### Negligent Infliction of Emotional Distress
### (MPD Officers and USPP Officers)

146.    Paragraphs 1 through 145 are incorporated by reference as though fully set forth herein.

147.    This claim of negligent infliction of emotional distress is brought against the individually-listed MPD Officers and the individually-listed USPP Officers.

148.    As noted above, the MPD and USPP officers had a special relationship with Plaintiff, including, but not limited to, affirmative duties to promptly render proper medical care to Plaintiff, to use only that degree of force necessary to properly restrain Plaintiff during the course of his arrest/seizure, and to stop – or, preferably, prevent – the senseless beating that Plaintiff ultimately underwent.   This special relationship and these affirmative duties necessarily caused the MPD and USPP officers to undertake an obligation to Plaintiff of a nature that necessarily implicated his emotional well-being.

149.    Here, there was an especially likely risk that the certain MPD and USPP officers' inactions, namely that of standing around and failing to stop, or even try to stop, the beating of Plaintiff, would cause serious emotional distress to the Plaintiff; especially after the officers had already handcuffed (and restrained) Plaintiff, and another police officer had yelled at the officers to "stop or you will kill him."

150.    Nevertheless, certain MPD and USPP officers chose not to act, and did not even try, which ultimately prevented Plaintiff from escaping the beating.

151.    The MPD and USPP officers' failures to intervene and stop the brutal assault by the MPD and USPP officers, in breach of their affirmative duties, did, in fact, cause serious emotional distress to Plaintiff as he feared he might not make it out alive.

152.    The MPD and USPP officers' breach of their obligations to Plaintiff is evidenced, in part, by the objective unreasonableness of their actions and inactions noted above.  Indeed, as noted, a "non-participating" officer screamed at the officers to "stop or you will kill him."  Further, another officer noted, upon arriving at the hospital and seeing Plaintiff's injuries, that he had never seen taser barbs so deeply penetrated into a suspect or arrestee.  Any reasonable officer – or civilian, for that matter – has reason to know that stomping on the head of a handcuffed individual is entirely beyond all decency and reason.

153.    In sum, it was reasonably foreseeable to these certain MPD and USPP officers that Plaintiff would suffer serious and verifiable emotional distress as a result of their inactions, emotional distress which Plaintiff, in fact, still suffers from to this day.

WHEREFORE, Plaintiff demands judgment against the individually-listed MPD Officers and the individually-listed USPP Officers, jointly and severally, as follows:

(1)    Compensatory damages in the amount of no less than $500,000.00,

(2)    Punitive damages in the amount of no less than $500,000.00,

(3)    Costs and expenses associated with this suit, and

(4)    Such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

154.    Plaintiff demands a jury trial on all issues.

Dated:  March 29, 2013                    Respectfully Submitted,


                                          */s/ Michael A. Tilghman II*

                                          _____
                                          James C. Bailey (DC # 462391)
                                          Michael A. Tilghman II (DC # 988441)
                                          Sara M. Klayton (DC # 1001228)
                                          BAILEY & EHRENBERG PLLC
                                          1015 18th Street NW
                                          Suite 204
                                          Washington, DC  20036
                                          T:  (202) 331-1331
                                          F:  (202) 318-7071
                                          jcb@becounsel.com
                                          mat@becounsel.com
                                          smk@becounsel.com

                                          **Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I, Michael A. Tilghman II, hereby certify that on this 29th day of March 2013 a true and correct copy of the foregoing was filed with ECF, thereby transmitting a copy to the following:

> Alex Karpinski
> Assistant Attorney General
> 441 4th Street NW
> 6th Floor South
> Washington, DC  20001

*/s/ Michael A. Tilghman II*
_____
Michael A. Tilghman II